COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Felton, Judges Elder, Frank, Humphreys, Kelsey, McClanahan, Haley, Petty,
            Beales, Powell and Alston
Argued at Richmond, Virginia


DAVID L. FOLTZ, JR., S/K/A
  DAVID LEE FOLTZ, JR.
                                                            OPINION BY
v.       Record No. 0521-09-4              CHIEF JUDGE WALTER S. FELTON, JR.
                                                            APRIL 5, 2011
COMMONWEALTH OF VIRGINIA


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Joanne F. Alper, Judge

        Christopher Leibig (Andrea Moseley; Zwerling, Leibig & Moseley,
        P.C., on briefs), for appellant.

        Virginia B. Theisen, Senior Assistant Attorney General (Kenneth T.
        Cuccinelli, II, Attorney General, on brief), for appellee.

        Amicus Curiae:  American Civil Liberties Union of Virginia
        Foundation, Inc. (Rebecca K. Glenberg; Thomas Okuda Fitzpatrick
        (Third Year Practice Certificate), on brief), for appellant.


        David L. Foltz, Jr. ("appellant") was convicted by a jury of abduction with intent to defile

pursuant to Code § 18.2-48 and was sentenced to life imprisonment.  Before a panel of this

Court, appellant contended that the trial court erred by denying his motion to suppress

eyewitness testimony of police officers who observed him sexually assault a victim while she

walked on a public sidewalk.  Specifically, he asserts that evidence was inadmissible because it

was obtained as a result of police officers' use of a global positioning system ("GPS") that they

placed on his employer's work van to track his movement, without first obtaining a search

warrant, in violation of the Fourth Amendment of the United States Constitution and Article I,

Section 10, of the Virginia Constitution. In a published opinion, the panel affirmed appellant's conviction. See Foltz v. Commonwealth, 57 Va. App. 68, 698 S.E.2d 281 (2010). Pursuant to Code § 17.1-402(D)(ii), we ordered rehearing en banc and stayed the mandate of the panel decision. See Foltz v. Commonwealth, 57 Va. App. 163, 699 S.E.2d 522 (2010).

On rehearing en banc, we conclude that the trial court did not err in denying appellant's motion to suppress the eyewitness testimony of the police officers who observed him sexually assault the victim. Accordingly, we affirm appellant's conviction.

## I. BACKGROUND

On appeal,

> "[w]e consider the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth, the prevailing party at trial. We apply the same standard when, as here, we review the trial court's denial of the defendant's motion to suppress the evidence."

Perry v. Commonwealth, 280 Va. 572, 578, 701 S.E.2d 431, 435 (2010) (quoting Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 924 (2000) (citations omitted)).

At the time of his arrest, appellant was a registered sex offender on probation as a result of prior convictions, including rape. Appellant worked for a food services company ("employer"). Employer provided him with a company van to use for work-related purposes in May 2007. Employer limited appellant's use of the assigned van to drive to his home, to the company headquarters, to off-site workplaces and, by special permission, to probation-related appointments after work hours.

A series of sexual assaults bearing similar characteristics occurred in the Northern Virginia region beginning in November 2007. After hearing news reports related to those assaults, retired Fairfax County Police Detective J. Kraut determined that the recent assaults were "amazingly like" the unique *modus operandi* used in offenses he had investigated in the

late 1980s, although he could not recall the name of the individual who was investigated in the earlier offenses.

In January 2008, Kraut contacted Lieutenant Akre of the Fairfax County Police Department's sex crimes unit and told her about his investigation of the earlier offenses.[1] At the time Kraut contacted her, Lt. Akre already had identified appellant as a suspect in the recent sexual assaults.[2]

The investigating officers obtained appellant's work schedule and his schedule for probation-related meetings. They compared those schedules with the times and locations of the recent sexual assaults. The officers determined that the recent assaults occurred in the general area where appellant worked and attended meetings and that the times and locations of those assaults were consistent with his presence for work and meetings in the same areas. From the information that they had collected, the officers focused on appellant as a strong suspect in the recent assaults.

Thereafter, on February 1, 2008, the officers attached a GPS system to the bumper of appellant's assigned work van while it was parked on the public street in front of his residence. They did not obtain a search warrant prior to doing so nor did they obtain employer's permission. The officers first examined data from the GPS tracking system on the afternoon of February 5, 2008, four days after they placed the device on the van. From that data, they observed that the van had been driven in and out of various neighborhoods where the recent

---

[1] When Lt. Akre related the substance of Kraut's call to a senior Fairfax County detective, the senior detective immediately knew Kraut was referring to appellant.

[2] Police files revealed that the offenses involving appellant in the 1986-1990 timeframe shared similar characteristics with the recently reported offenses and that after appellant was arrested in 1990, he had confessed to committing six sexual offenses, including a rape in 1986.

sexual assaults had occurred. The pattern of the van's movements concerned the officers, who characterized the pattern as "hunting" behavior.

On the evening of that same day, February 5, 2008, another sexual assault occurred in the region. The investigating officers checked the GPS log and discovered that appellant's assigned work van was parked about a block or two away from the scene of that assault at the time it occurred. With that additional information, the officers determined it was critical to personally follow appellant as he moved around.

On the following day, officers visually followed appellant as he drove his personal truck.[3] They observed him park his truck, get out, and put on a jacket and gloves. Two police officers then followed appellant on foot. They observed him, with "something up over his face," run after a woman who was walking down a public sidewalk. The officers testified that they saw appellant grab the woman from behind and knock her to the ground. They then saw appellant pull his victim under a tree, pin her down, and try to unbutton her pants. The officers quickly intervened, stopped the assault, and apprehended appellant.

Prior to trial, appellant moved to suppress all evidence collected by the police flowing from their use of the GPS device to track the movement of his assigned work van. He argued that the police were required to obtain a search warrant prior to attaching the GPS device to the van, and to use that device to track his movements. He contended that the officers' failure to obtain a search warrant prior to attaching the GPS device required that any evidence obtained through the use of that device, including the testimony of the officers who observed him attack the victim, be suppressed under the exclusionary rule. The trial court denied appellant's motion to suppress. It found that prior to placing the GPS device on employer's van assigned to appellant, the investigating officers had already focused on appellant as the prime suspect in the

---

[3] The surveillance team consisted of 18 police officers in 10 unmarked vehicles.

recent sexual assaults on women in the region.  Regarding the use of the GPS device, the trial court stated, "all it did was technologically supplement that information which the police could have obtained by their own sensory perception by actually trailing him or following him for a period of time, which they ultimately did in making the arrest in this case."

Following his conviction, appellant petitioned this Court for an appeal.  His petition for appeal contained twelve questions presented.[4]  By per curiam order dated September 29, 2009, we denied nine of the questions presented, and granted the following three questions:

> I.  Whether the trial court erred by ruling that the warrantless, Global Positioning System (GPS) tracking of Mr. Foltz did not violate the Fourth Amendment or Article [I], Section 10 of the Virginia Constitution where the tracking was done without probable cause, without real-time police monitoring, without attempts not to track in private areas, and where Mr. Foltz was tracked on private property not visible to the public.
>
> II.  Whether the trial court erred by ruling that the police's act of physically placing of a GPS device inside the bumper of a van controlled by Mr. Foltz violated the Fourth Amendment and Article [I], Section 10 of the Virginia Constitution.
>
> III.  Whether the trial court abused its discretion by denying Mr. Foltz the right to discover the precise make and model of the GPS system used by police to track him while refusing admission of Mr. Foltz's out-of-court GPS experiment on the grounds that Mr. Foltz failed to demonstrate that the GPS device used in the experiment was sufficiently similar to the police system.

Following the decision of a panel of this Court affirming appellant's conviction, we ordered rehearing en banc on the issues addressed by the panel in its opinion.[5]

---

[4] This appeal is governed by Rule 5A:20(c) as worded prior to its revision effective July 1, 2010, changing the requirement from setting forth "questions presented" to setting forth "assignments of error."

[5] Pursuant to Rule 5A:20(e) we do not address appellant's question presented III because appellant did not address that question presented in his brief to the en banc Court.

## II. ANALYSIS

"In this case, as in all others, we seek to decide cases, 'on the best and narrowest ground available' from the record." Kirby v. Commonwealth, 50 Va. App. 691, 698 n.2, 653 S.E.2d 600, 603 n.2 (2007) (quoting Miles v. Commonwealth, 274 Va. 1, 2, 645 S.E.2d 924, 925 (2007) (Kinser, J., concurring) (citations omitted)). This approach encourages "'judicial self-restraint'" by avoiding the resolution of broad, reasonably debatable legal issues when narrower, less debatable legal issues fully dispose of the appeal before the court. Cooper v. Commonwealth, 54 Va. App. 558, 566, 680 S.E.2d 361, 365 (2009) (quoting Craddock v. Commonwealth, 40 Va. App 539, 551 n.1, 580 S.E.2d 454, 461 n.1 (2003)).

On appeal, appellant argues that the eyewitness testimony of the police officers who observed him attack the victim must be excluded from evidence as "fruit of the poisonous tree" from the unlawful use of a GPS tracking device. Wong Sun v. United States, 371 U.S. 471, 488 (1963).

From our review of the record on appeal, we conclude that the trial court did not err in denying appellant's motion to suppress the eyewitness testimony of the police officers. We reach this conclusion without addressing whether the use of the GPS device, attached to employer's van assigned to appellant, without first obtaining a search warrant, violated appellant's rights under the Fourth Amendment of the United States Constitution and Article I, Section 10 of the Virginia Constitution.[6]

---

[6] At oral argument, the parties agreed that the basis for our decision today was not raised to the trial court. However, we conclude, for the reasons stated herein, that the trial court's decision to deny appellant's motion to exclude the officers' eyewitness testimony of appellant's attack on his victim was the correct decision.

> "Failure to make the argument before the trial court is not the
> proper focus of the right result for the wrong reason doctrine.
> Consideration of the facts in the record and whether additional

The record on appeal clearly demonstrates that the officers' investigation of recent unsolved sexual assaults in the region pointed to appellant as the likely perpetrator of those assaults, based on the perpetrator's unique *modus operandi* in those assaults and the locations where those assaults occurred. Prior to placing the GPS device on the van, the investigating officers acquired significant and reliable information that led them to focus on appellant, a registered sexual offender on probation, as the prime suspect in the recent sexual assaults. The record also reflects that prior to use of the GPS device, the investigating officers compared the *modus operandi* appellant used in the previous sexual assaults with the *modus operandi* used by the perpetrator of the recent unsolved sexual assaults in the region. Additionally, the recent assaults occurred in the area where appellant lived and worked, and where he attended probation-related meetings. Based on that information, and the report of a sexual assault occurring the previous night in an area where GPS records indicated appellant's assigned work van had been parked nearby, the officers concluded that appellant was likely the perpetrator of the sexual assaults and that he was likely to attack again. Based on those factors, the officers decided to visually follow appellant's movements the following day.

During their visual surveillance of appellant, the officers witnessed his sexual assault on the victim. The officers were not engaged in any unlawful conduct whatsoever when they conducted a visual surveillance of appellant as he traveled in his personal truck over public

---

factual presentation is necessary to resolve the newly-advanced reason is the proper focus of the application of the doctrine."

Banks v. Commonwealth, 280 Va. 612, 617, 701 S.E.2d 437, 440 (2010) (quoting Perry, 280 Va. at 580, 701 S.E.2d at 436).

roads. When they saw appellant sexually assault the victim, they quickly intervened, rescued the victim, and apprehended him.[7]

The officers' eyewitness testimony was material, competent, and relevant to prove that appellant was guilty of abduction with intent to defile.

> "As a general rule, a litigant is entitled to introduce all competent, material, and relevant evidence tending to prove or disprove any material issue raised, unless the evidence violates a specific rule of admissibility." "Evidence is admissible if it is both relevant and material," and it is inadmissible if it fails to satisfy either of these criteria. "Evidence is relevant if it has any logical tendency, however slight, to establish a fact at issue in the case." "Evidence is material if it relates to a matter *properly* at issue."

Calhoun v. Commonwealth, 35 Va. App. 506, 509, 546 S.E.2d 239, 241 (2001) (quoting Peeples v. Commonwealth, 28 Va. App. 360, 365, 504 S.E.2d 870, 873 (1998) (citations omitted)).

However, appellant asserts that, because information obtained from the GPS device was a factor in the police officers' decision to personally follow him, any unlawful acts they observed him commit in their presence must be excluded as "fruit of the poisonous tree." We disagree.

Whether evidence should be excluded as derivative of an illegal act and, therefore, suppressed under the exclusionary rule as "fruit of the poisonous tree" of that act, depends on whether "'the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" Wong Sun, 371 U.S. at 488 (quoting John M. Maguire, Evidence of Guilt 221 (1959)), quoted with approval in Hudson v. Michigan, 547 U.S. 586, 592 (2006). The United States Supreme Court has observed that evidence is not "'fruit of the poisonous tree' simply because it would not have come to light *but for* the illegal actions of the police." Id. (emphasis added). See Hudson, 547 U.S. at 592 (observing that "but-for causality is only a necessary, not a sufficient, condition

---

[7] Police "officers may arrest, without a warrant, any person who commits any crime in the presence of the officer . . . ." Code § 19.2-81(B).

for suppression"). The exclusion of evidence "'has always been our last resort, not our first impulse,' and our precedents establish important principles that constrain application of the exclusionary rule." Herring v. United States, 555 U.S. 135, ___, 129 S. Ct. 695, 700 (2009) (quoting Hudson, 547 U.S. at 591). Evidence is obtained by means sufficiently distinguishable to be admissible despite an illegality by the authorities if it is "evidence attributed to an independent source" or "evidence where the connection has become so attenuated as to dissipate the taint." Warlick v. Commonwealth, 215 Va. 263, 266, 208 S.E.2d 746, 748 (1974).

Here, we hold that the exclusionary rule does not bar the eyewitness testimony of the officers who witnessed appellant sexually assault the victim. The assault the officers observed was a new and distinct offense from the previously committed crimes the officers were investigating, and sufficiently independent of any information obtained by them from the GPS tracking device.[8] The officers' focus on appellant, a registered sex offender on probation, as the likely perpetrator of the recent sexual assaults did not begin with the placement of the GPS device on his assigned work van. They knew that appellant resided, worked, and attended probation-related meetings where the recent assaults occurred. They knew that the manner in which the perpetrator of the recent sexual assaults attacked those victims was "amazingly like" that appellant used in previous sexual assaults to which he had previously confessed. The additional information obtained from the GPS tracking of the van's locations near the scene of the latest attack was just one more piece of information to add to the already strong focus on appellant as the person responsible for the assaults. The officers' immediate concern for public

_____

[8] Cf. United States v. Sprinkle, 106 F.3d 613 (4th Cir. 1997) (affirming conviction for new, distinct crime committed by suspect's response to an illegal stop); Testa v. Commonwealth, 55 Va. App. 275, 685 S.E.2d 213 (2009) (applying Sprinkle to affirm conviction of obstruction of justice for threatening police officer committed during allegedly unlawful entry); Brown v. City of Danville, 44 Va. App. 586, 606 S.E.2d 523 (2004) (affirming conviction where appellant engaged in a new and distinct criminal act in response to unlawful police conduct).

safety and the urgency of apprehending the predatory sexual attacker resulted in their decision to visually follow appellant as he drove his personal vehicle along the public streets the day following the most recent sexual assault in that area. The officers' testimony, which appellant sought to suppress, related to events they observed as they saw appellant assault the innocent victim as she walked along a public sidewalk.

We hold that the officers' observations of that criminal act were sufficiently attenuated from any argued taint arising from the placement and use of the GPS device to track the movements of appellant's assigned work van and that there is no basis in law to exclude the officers' eyewitness testimony of a violent assault being committed in their presence.

## III. CONCLUSION

For the reasons stated herein, we hold that the trial court did not err in denying appellant's motion to suppress the eyewitness testimony of the police officers. Accordingly, we affirm the judgment of the trial court.

Affirmed.

Beales, J., with whom Haley, J., joins, concurring.

While I agree that this Court should affirm appellant's conviction, I believe that the best and narrowest ground for resolving this appeal is to address the Fourth Amendment issue that was presented to the trial court and to this Court on appeal. This Fourth Amendment issue was extensively briefed and argued by the parties in the trial court, and it was the issue that the trial court actually addressed in denying appellant's motion to suppress. Furthermore, this same Fourth Amendment issue was the issue presented to this Court in appellant's petition for appeal, and it was the subject of the questions presented granted by this Court.[9] On appellate review in this Court, it is clear that no Fourth Amendment violation occurred under the particular facts of this case (and no one has ever argued that any Virginia statute was violated here either).[10] Accordingly, I would squarely address the Fourth Amendment issue that is before this Court in this case, and I would affirm the trial court on this Fourth Amendment basis as argued by the parties – not on an alternative basis.

## I. BEST AND NARROWEST GROUND FOR AFFIRMING

If this Court is confronted with more than one reason to affirm a trial court's decision, then we should, of course, affirm that decision on the best and narrowest ground available from the record. Podracky v. Commonwealth, 52 Va. App. 130, 134, 622 S.E.2d 81, 84 (2008). Thus,

_____

[9] Appellant raised two related issues before this Court, which were the same issues he raised at trial – whether his Fourth Amendment rights were violated by putting a GPS device in the bumper of his work van or by using a GPS device to track his movements in the work van. This Court granted appellant's petition for appeal on these issues. By basing our ruling on the Fourth Amendment, we would be affirming the trial court on the same grounds on which the trial court itself based its denial of appellant's motion to suppress.

[10] Appellant never argues that there is any Virginia statute requiring that a warrant be issued before a GPS device may be placed in the bumper of his work van. The only question on appeal before this Court in this case is whether the Fourth Amendment prohibits the use of a GPS device on a person's work vehicle (which is owned by the person's employer) when there is reasonable, articulable suspicion that this person has committed or is about to commit a crime – or, as here, a continuing series of crimes.

in appropriate cases, appellate courts can and should affirm a trial court's ruling on a different basis than the basis used by the trial court – provided that this alternative ground is the *best* and narrowest one for affirming the trial court's decision.

In some cases, such as the case today before this Court, the best and narrowest ground for affirming the denial of a suppression motion is to hold that the trial court simply did not err in its ruling on the substantive constitutional issue. It is not necessary, on appeal in such a case, to avoid addressing the substantive constitutional issue altogether and instead reach the conclusion that the exclusionary rule is inapplicable. See, e.g., United States v. Pineda-Chinchilla, 712 F.2d 942, 944 (5th Cir. 1983). No controlling authority holds or even suggests that this Court *must* consider the exclusionary rule when seeking to determine the best and narrowest ground for affirmance – especially when it is clear that the trial court's ruling on the substantive constitutional issue was not erroneous. See Armstead v. Commonwealth, 56 Va. App. 569, 576, 695 S.E.2d 561, 564 (2010) ("We do not address the exclusionary rule issue because 'the best and narrowest ground available' for decision is the first premise of Armstead's argument – that the trial court's decision is inconsistent with [Arizona v. Gant, 129 S. Ct. 1710 (2009)]. We do not believe it is." (footnotes and citation omitted)).[11]

_____

[11] Like the majority, I do not tend to believe that the testimony of the police officers describing appellant's actions on February 6, 2008, which appellant sought to suppress as fruit of the poisonous tree, is subject to the exclusionary rule. However, an appellate court need not actually address the exclusionary rule on appeal, if the better and narrower ground for affirmance is to address the substantive Fourth Amendment issue. See Armstead, 56 Va. App. at 576, 695 S.E.2d at 564. In addition, a significant function of an appellate court is to "to provide guidance to trial courts" on substantive legal issues, unless doing so would result in an advisory opinion. See Angel v. Commonwealth, 281 Va. 248, 273 n.6, 704 S.E.2d 386, 401 n.6 (2011) (internal quotation marks omitted); see also United States v. Cruz, 581 F.2d 535, 541 (5th Cir. 1978) (en banc) ("The dual function of appellate courts is to review the record of trials for alleged error and, incident thereto, to announce and apply principled rules for the guidance of trial courts, lawyers, and litigants."), overruled on other grounds by United States v. Causey, 834 F.2d 1179, 1184 (5th Cir. 1987). Here, applying the Fourth Amendment principles considered by the trial court to the facts of this case certainly would not be providing an advisory opinion.

Here, "the best and narrowest ground," id., for resolving this appeal is to address the Fourth Amendment issue that was actually presented to the trial court and that was presented to this Court on appeal. The Fourth Amendment principles pertinent to this case are well established. The trial court based its ruling on these Fourth Amendment principles. The questions presented raised by appellant and granted by this Court were based on these Fourth Amendment principles. Addressing these Fourth Amendment principles on appellate review, it is clear that appellant's Fourth Amendment rights were not violated, given the facts in this particular case. Therefore, in this case, it is certainly appropriate to apply these well-established Fourth Amendment principles to the very specific factual situation presented here.

## II. FOURTH AMENDMENT ANALYSIS

I certainly acknowledge up front that there are some very legitimate concerns arising from the development and use of sophisticated technology such as GPS devices. See, e.g., United States v. Knotts, 460 U.S. 276, 284 (1983); United States v. Maynard, 615 F.3d 544, 565 (D.C. Cir. 2010); United States v. Garcia, 474 F.3d 994, 998 (7th Cir. 2007). The government *could* potentially abuse this technology in an Orwellian manner by truly invading the private lives of individuals without any constitutional justification.

Although I certainly share these concerns about the potential use of Orwellian practices by the state that would abuse the privacy rights of the citizenry, the particular facts of *this specific case* simply do not even raise such concerns. See Dow Chemical Co. v. United States, 476 U.S. 227, 239 n.5 (1986) ("Fourth Amendment cases must be decided on the facts of each case," not based on generalizations.). As Judge Posner wrote on behalf of the Seventh Circuit in Garcia, *affirming* the use of GPS tracking in that case, "[w]hether and what kind of restrictions should, in the name of the Constitution, be placed on such surveillance when used in routine criminal enforcement are momentous issues that fortunately we need not try to resolve in this

case." 474 F.3d at 998.  Similarly, this Court need not tackle such "momentous issues" in this case.  Here, given the specific facts of this case, *this appellant's* Fourth Amendment rights clearly were not violated.

"The Fourth Amendment of the United States Constitution provides that 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'"  Gibson v. Commonwealth, 50 Va. App. 744, 749, 653 S.E.2d 626, 628 (2007) (quoting U.S. Const. amend. IV).  Thus, "[t]he Fourth Amendment protects the privacy and security of individuals against arbitrary searches and seizures by governmental officials."  Harris v. Commonwealth, 276 Va. 689, 694, 668 S.E.2d 141, 144 (2008) (citing Camara v. Municipal Court, 387 U.S. 523, 528 (1967); Brown v. Commonwealth, 270 Va. 414, 418, 620 S.E.2d 760, 762 (2005)).  "The key inquiry regarding whether the [Fourth] Amendment affords protection is 'whether a person has a constitutionally protected reasonable expectation of privacy.'"  Gibson, 50 Va. App. at 749, 653 S.E.2d at 628 (quoting Oliver v. United States, 466 U.S. 170, 177 (1984)); see United States v. Knights, 534 U.S. 112, 118 (2001) (noting that "[t]he touchstone of the Fourth Amendment is reasonableness").  The United States Supreme Court has made it clear that a constitutionally protected reasonable expectation of privacy exists under the Fourth Amendment *only* if a person has a subjective expectation of privacy *and* if society recognizes that subjective expectation of privacy as reasonable.  Kyllo v. United States, 533 U.S. 27, 33 (2001); Oliver, 466 U.S. at 177.

"[T]he Fourth Amendment protects people, not places."  Katz v. United States, 389 U.S. 347, 351 (1967).[12]  This case does not concern a search and seizure of appellant's person, or the

_____

[12] Although the actual text (as opposed to the footnote) of Judge Humphreys's concurrence appears to suggest that the United States Supreme Court should overturn (or significantly alter) decades of Fourth Amendment precedent from that Court, other federal appellate courts, and the Virginia Supreme Court, the parties here agree that the United States

- 14 -

recording of any of appellant's private conversations.  This case does not involve appellant's

home *or even appellant's own property*.  Especially as this case concerns a van owned and

regulated by appellant's employer, the circumstances in this case certainly did not violate

appellant's own privacy protections under the Fourth Amendment.

A.  Placement of GPS Device

In this case, the police installed a GPS device in the bumper of a van that was owned by

appellant's *employer* – it is undisputed that the van was not appellant's own vehicle.  Appellant

used this work van with his employer's consent, and the employer allowed him to use it *only* for

work and to travel to appointments with his probation officer when time would not permit him to

go home first and use his own vehicle.  In short, appellant's employer clearly regulated the use of

this work van, and it forbade him from using the van for almost all personal activities.

Furthermore, the employer's van used by appellant in this case was parked on a public

street when the police attached the GPS device to the van.  The device was placed in the bumper

of the van; thus, attaching the device did not require opening the van's passenger compartment or

accessing its battery power.  Given these circumstances (and for the reasons that follow), no

Fourth Amendment violation resulted from the placement of the GPS device on the employer's

van in this manner.

The placement of the GPS device in the bumper of appellant's employer's van is similar

in some ways to the situation addressed by the United States Supreme Court in United States v.

Karo, 468 U.S. 705 (1984).  In Karo, tracking devices were placed in containers that were then

purchased by Karo, who in turn placed the containers in his vehicle.  Id. at 707.  The Supreme

_____

Supreme Court's decisions in Katz and its progeny are the controlling cases on the Fourth
Amendment issues raised in this appeal.

- 15 -

Court found that the transfer to Karo of the containers with the hidden tracking devices did not infringe on his privacy, explaining:

> [The transfer] conveyed no information that Karo wished to keep private, for it conveyed no information at all. To be sure, it created a potential for an invasion of privacy, but *we have never held that potential, as opposed to actual, invasions of privacy constitute searches for purposes of the Fourth Amendment*.

Id. at 712 (emphasis added). Similarly, in this case, the installation of the GPS device in the bumper of appellant's employer's van did not relay *any* information – private or otherwise, from appellant or from anyone else – to the police. Therefore, the police did not infringe appellant's privacy by installing the device in the work van because nothing private was actually exposed by the placement.

In addition, placing the GPS device in the bumper of his employer's van, while that van was parked on a public street, did not expose anything that was not already visible and freely accessible to the public. See United States v. Pineda-Moreno, 591 F.3d 1212, 1215 ("If a neighborhood child had walked up Pineda-Moreno's driveway and crawled under his Jeep to retrieve a lost ball or runaway cat, Pineda-Moreno would have no grounds to complain."), reh'g en banc denied, 617 F.3d 1120 (9th Cir. 2010); United States v. McIver, 186 F.3d 1119, 1127 (9th Cir. 1999) (finding McIver did not prove that "he intended to preserve the undercarriage" of the vehicle "from inspection by others" and that "the officers did not pry into a hidden or enclosed area" when they installed a GPS device on the vehicle); United States v. Rascon-Ortiz, 994 F.2d 749, 754-55 (10th Cir. 1993) (finding that the agent did not violate a defendant's privacy when he examined the undercarriage of a vehicle because "[t]he undercarriage is part of

the car's exterior, and as such, is not afforded a reasonable expectation of privacy" and because the agent did not "disturb[] or move[] parts of the car in order to facilitate his observations").[13]

The United States Supreme Court has noted that "[t]he public is fully aware that it is accorded less privacy in its automobiles" because there is a "compelling governmental need" to regulate motor vehicles. California v. Carney, 471 U.S. 386, 392 (1985). Accordingly, "warrantless examinations of automobiles have been upheld in circumstances in which a search of a home or office would not." South Dakota v. Opperman, 428 U.S. 364, 367 (1976). This case presents even less of a privacy interest than the situations addressed by the Supreme Court in Carney and Opperman. Here, the GPS device was placed inside the *bumper* of the work van that appellant's employer allowed him to drive – not inside the passenger compartment or in the glove compartment, where personal articles are often kept. The bumper of appellant's employer's van, parked on a public street, certainly does not "provide the setting for those intimate activities that the [Fourth] Amendment is intended to shelter from government interference or surveillance." Oliver, 466 U.S. at 179.

Based on the specific facts in this case, the police did not violate appellant's reasonable expectation of privacy when they installed the GPS device in the bumper of his employer's work van. The employer's van was not appellant's personal property, and it was not parked on his property. Although appellant drove the van, he was not in control of where the van was supposed to go. Instead, appellant's employer told him where he could drive the van. Thus, the employer strictly controlled the van's movements and directed appellant where he was supposed to be going with it.

---

[13] The fact that the police had to touch the work van to install the GPS does not mean that the installation violated a reasonable expectation of privacy in some way. See Cardwell v. Lewis, 417 U.S. 583, 591 (1974) (finding that a defendant's privacy rights were not violated when the police examined a tire and took a paint sample from his car as it was in a public parking lot).

Furthermore, appellant did nothing to remove his employer's van from the public's view – it was parked on the street without a cover, and nothing prevented the public from observing the van. In fact, appellant's employer clearly *wanted* the public to notice this van – the business' logo and contact information were publicized on the side of the van, obviously intending to attract attention.

Moreover, the installation of the GPS device did not require that the police open the doors or the hood of the employer's van, and the police did not connect the device to any operational part of the vehicle. Compare Karo, 468 U.S. at 707 (finding "no Fourth Amendment interest of Karo or of any other respondent was infringed by the installation of the beeper" which merely occupied space in a can purchased by Karo) with Commonwealth v. Connolly, 913 N.E.2d 356, 361-62, 369 (Mass. 2009) (finding that installation of a GPS device *by attaching it to the car's battery* violated the Massachusetts Declaration of Rights). Instead, the GPS device used its own power source. See Garcia, 474 F.3d at 997. No evidence suggested that the device affected the performance of the employer's van or impeded in any way appellant's ability to use the van for his job.

Given all of these circumstances, I would find that the installation of the GPS device in this particular case did not violate appellant's Fourth Amendment rights.

### B. GPS Tracking

I would also find that appellant's Fourth Amendment privacy rights were not violated when the police used the GPS device to track appellant's movements while appellant was driving on the public streets[14] in his employer's van, especially given his movements in the van were already regulated by the employer, as the van's owner.

---

[14] Appellant also claims that his Fourth Amendment rights were violated when the police tracked the van to his employer's place of business, which was in a business park marked "private" property. However, as the trial court found, appellant presented no evidence that

The United States Supreme Court has repeatedly held that society does not recognize an expectation of privacy in the movement of vehicles on public streets. Knotts, 460 U.S. at 281 ("A person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another."); Cardwell v. Lewis, 417 U.S. 583, 590 (1974) ("A car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its contents are in plain view."); see also Carney, 471 U.S. at 392 ("The public is fully aware that it is accorded less privacy in its automobiles . . . ."); Rakas v. Illinois, 439 U.S. 128, 148 (1978) ("We have on numerous occasions pointed out that cars are not to be treated identically with houses or apartments for Fourth Amendment purposes."). Here, appellant drove his employer's work van on public streets.

Given the limited expectation of privacy in a vehicle's movement on public roads, the particular facts here make it very clear that the use of GPS tracking *in this case* did not violate appellant's privacy rights. First, in this case, the police used the GPS device to track appellant's movements as he drove his employer's work van – not as he drove his own vehicle. The movements of this van were already being "tracked" by its owner, appellant's employer, who regulated appellant's use of its work van. Therefore, this case is unlike Maynard, 615 F.3d at 555, where the police tracked the defendant's unrestricted driving of his personal vehicle for a number of weeks. This case is also unlike Connolly, 913 N.E.2d at 361, and State v. Weaver,

---

*appellant* had any expectation of privacy at his employer's warehouse – especially regarding the movement of the van, which his employer owned. The police did not track the employer's van onto any property owned by appellant or to any other private place where appellant would have a reasonable expectation of privacy. As a result, I agree with the trial court that *appellant's* privacy rights were not violated when the GPS device tracked the employer's van to the employer's warehouse. See Katz, 389 U.S. at 351.

909 N.E.2d 1195, 1195 (N.Y. 2009),[15] where the police tracked the personal vehicles of the suspects. In those three cases, unlike here, no one regulated the defendants' use of their vehicles.

Here, on the other hand, appellant's employer limited appellant's use of the work van. Appellant did not have permission to drive the van wherever he liked or to do whatever he wanted with it. He could not sell it or rent it to other people. He could not drive it for personal errands. As the prosecutor noted in the trial court, appellant was not even permitted to use his employer's van "to stop on the way home from work for grocery shopping." Appellant was only allowed to drive the van to the places where his employer told him to take it and to pre-approved probation meetings. Therefore, appellant's movements with the work van were already essentially "under surveillance" by his employer.

Indeed, this case concerns *only* appellant's movements *while he drove his employer's work van*. As the trial court found, the police "didn't put the device *on him*; they put it on [the employer's] van." (Emphasis added). This situation is simply very different than the situation in Maynard. In that case, over the course of a month, the authorities tracked *all* of that defendant's unregulated and otherwise unmonitored movements *in his own vehicle*. Maynard, 615 F.3d at 558. In this case, over a much shorter period of time, GPS tracking was *only* used to track appellant's movements in his employer's van – and appellant could not have had a reasonable expectation of privacy in his movements in his employer's van because he understood that his movements in this van were *already supposed* to be regulated by and revealed to his employer.

---

[15] Both the Massachusetts and the New York courts have found that GPS tracking specifically violated their state constitutions, not necessarily the federal constitution. See Connolly, 913 N.E.2d at 369; Weaver, 909 N.E.2d at 1201-03. The privacy rights afforded by the Massachusetts and New York state constitutions are broader than those afforded under the federal constitution. Commonwealth v. Balicki, 762 N.E.2d 290, 299 n.11 (Mass. 2002); Weaver, 909 N.E.2d at 1202. In Virginia, on the other hand, Article I, Section 10, of our state constitution is simply coextensive with the Fourth Amendment of the United States Constitution. Lowe v. Commonwealth, 230 Va. 346, 348, 337 S.E.2d 273, 274 (1985) (citing A. Howard, I Commentaries on the Constitution of Virginia 182 (1974)).

See Smith v. Maryland, 442 U.S. 735, 743-44 (1979) ("This Court consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.").

In addition, the employer's van in this case was *designed* to attract attention, unlike the personal vehicles in Maynard, 615 F.3d at 555, Connolly, 913 N.E.2d at 361, and Weaver, 909 N.E.2d at 1195.[16] In those cases, the vehicles were typical cars or vans – private vehicles belonging to the suspects being tracked. Here, the vehicle was a commercial van owned by appellant's employer. The employer had placed its logo and business information on the side of the van – essentially advertising the business as appellant drove the employer's work van on the streets and parked it in public places. Clearly, appellant's employer *wanted* people to notice the van's movements. Appellant, as the driver of the van and an employee, knew that this conspicuous advertising had been placed on the work van.

Appellant simply cannot claim that he has a privacy expectation in the movements of his employer's van as it moves on the public streets. Both the appearance of the van and his employer's control of the van establish that appellant's movements with the van were already exposed while he drove it on the public streets and were certainly not kept private. Moreover, the police in this case were investigating a continuing series of sexual assaults, and appellant

---

[16] Moreover, the *manner* in which appellant drove his employer's van certainly attracted attention. Tracking the movements of the employer's van using GPS technology, police officers observed (in real time) how the employer's van was being driven in and out of various neighborhoods on the afternoon of February 5, 2008. This pattern of driving concerned the officers, who characterized the pattern as "hunting" behavior. Detective Kirk, one of the detectives who observed the GPS data, testified, "What I was observing was the vehicle driving on the same streets, driving at a slow rate of speed. That concerned me from my experience of working sex-crimes cases. It is often a pattern that is shown by sex offenders, rapists." "[W]hoever is driving that vehicle should be looked at," Detective Kirk recalled saying at that time, and the other officers assigned to the case agreed with his suggestion. That night, another sexual assault occurred – and the GPS data indicated that the employer's van was parked within two blocks of the scene of the attack at the time it occurred. The police then began following appellant themselves on February 6, 2008 – the next day.

- 21 -

does not now contest the trial court's finding that the police had reasonable, articulable suspicion to consider him a suspect in these offenses. The police used the GPS device to crack this case by tracking appellant on the public roadways – which they could, of course, do in person any day of the week at any hour without obtaining a warrant – and the police tracked appellant's movements with the GPS device *only while he drove his employer's vehicle*. Under these circumstances, the use of GPS tracking in this case was certainly not arbitrary – and was not unconstitutional. See Knights, 534 U.S. at 118; Camara, 387 U.S. at 528.

Consequently, the use of GPS tracking *in this case* did not violate appellant's Fourth Amendment rights.

### III. CONCLUSION

In my view, the best and narrowest ground for deciding this case is to hold that the trial court did not err in denying appellant's motion to suppress because the installation and use of the GPS device here simply did not violate the Fourth Amendment.

I recognize the potential for abuses of GPS technology by the government, but a multitude of circumstances *in this case* establish that appellant's privacy rights simply were not violated:

- the fact that the van was owned by appellant's employer – not appellant himself[17];

- the fact that the employer told appellant where to drive its van and otherwise regulated his use of the van;

- the fact that the van was intended by its owner to be seen – as a conspicuous form of advertising for appellant's employer – as it was being driven on the public streets;

---

[17] The employer has never expressed any concern about the police's placement of the GPS device on his van – not when he testified before the trial court and apparently not at any other time.

- the fact – not even contested on appeal – that the police had reasonable, articulable suspicion that appellant had recently committed a series of sexual assaults (similar to crimes for which he had been previously convicted) and that he was continuing to assault women;

- the fact that the employer's van was parked on a public street when the GPS device was installed;

- the fact that the GPS device was not connected to the employer's van's mechanical workings, such as its battery;

- the fact that the device was placed in the employer's van's bumper – not inside its passenger compartment; and

- the fact that the employer's van's movements were tracked while it was being driven on the public streets, where the police could, of course, have followed appellant in person at any time without obtaining a warrant.

Given all of these circumstances, which certainly do not establish any kind of arbitrary "intrus[ion] upon an individual's privacy," Wyoming v. Houghton, 526 U.S. 295, 300 (1999), I believe it is unnecessary to decide this case by holding that the exclusionary rule – a remedy for a Fourth Amendment *violation* – is inapplicable in this case. See Armstead, 56 Va. App. at 576, 695 S.E.2d at 564.

Accordingly, I would squarely address the Fourth Amendment issue that was the subject of appellant's questions presented in this Court and that was the issue upon which the appeal was granted by this Court – the same issue that was also the focus of argument in the trial court and on which the trial court made its decision. On this Fourth Amendment issue, it is clear that the trial court committed no error. Therefore, while I agree with the majority that the trial court's conviction of appellant for abduction with intent to defile should be affirmed, I would instead do

so by addressing the questions presented to, and granted by, this Court – and by holding that there was no Fourth Amendment violation under the specific facts of this particular case.

Humphreys, J., concurring.

I join entirely in the analysis and judgment of the majority that we need not address the merits of the Fourth Amendment implications of the use of GPS tracking devices by law enforcement officers because, for the reasons noted by the majority, the exclusionary rule does not operate to suppress the eyewitness testimony of the police officers in this case. I write separately only to address some of the points raised by Judge Beales in Section II of his concurring opinion.

The fundamental purpose of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." Camara v. Mun. Court of San Francisco, 387 U.S. 523, 528 (1967); see also Skinner v. Ry. Labor Execs.' Ass'n, 489 U.S. 602, 613-14 (1989) ("The [Fourth] Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government or those acting at their direction." (citing Camara, 387 U.S. at 528)). Since 1967, the Fourth Amendment has been understood to be fundamentally concerned with protecting an individual's "privacy" from invasion and interference by the government and its agents. Katz v. United States, 389 U.S. 347 (1967). With the advent of the telephone—and the subsequent ability to tap it from the premises of a third party, the phone company—the Supreme Court recognized that the old property-centric reading of the Fourth Amendment that married the concepts of "search and seizure" to physical trespass was no longer tenable. Id. at 351-53. Twentieth century technology had made it easy for government to intrude upon people's personal lives without intruding on their property. Consequently, the Supreme Court changed course in Katz, and determined that the Fourth Amendment "protects people, not places," id. at 351, and substituted "reasonable expectations of privacy" for property rights as the defining element of a government "search," id. at 360-61 (Harlan, J., concurring). Thus, under the current understanding of the Fourth

Amendment, the Constitution is concerned only with government actions that violate a "reasonable expectation of privacy," which courts have held is limited to the exposure of what was previously secret and not exposed in public. See, e.g., Carter v. Commonwealth, 209 Va. 317, 320, 163 S.E.2d 589, 592 (1968) ("A search implies a prying into hidden places.").

Advances in technology in the twenty-first century have engendered a growing number of previously unavailable investigative and surveillance techniques—such as the GPS location tracking illustrated by this case—that allow the government to conduct what many intuitively find to be an increasingly troubling degree of monitoring of its citizens, potentially on a vast scale, by targeting information that is at least, in some sense, "public." As was the case in United States v. Maynard, 615 F.3d 544, 555 (D.C. Cir. 2010), we are not talking about the "public" events of a single evening, but rather the comprehensive observation or electronic tracking that takes place over a period of days, weeks, or months. While it is reasonable to expect that anyone might witness any one of such a series of public activities or events, it does not follow that one cannot reasonably expect that a particular person or group would not be privy to all of them. Similarly, one might reasonably expect something as intensely personal as their genetic profile to remain private even if such a profile could in principle be extrapolated from residual DNA left upon a glass or fork "abandoned" in a public restaurant. Thus, Maynard can be read to suggest that private (and thus protected) facts may be extrapolated from the aggregation of individual public events or from a technologically assisted analysis of "public" objects or information. 615 F.3d at 565-66. Kyllo v. United States, 533 U.S. 27, 33 (2001), also supports the latter point.

However, although "privacy" is the centerpiece of current Fourth Amendment jurisprudence, the word "privacy" does not actually appear in the text of the Fourth Amendment. The constitutional protection actually promised is "security," and the time may be ripe for the

courts to reconsider that term as it was used and understood by the framers of the amendment in the context of our current "Information Age" where privacy is becoming an increasingly scarce commodity. While "privacy" and "security" are overlapping concepts, they are not congruent. Granting that we as a people feel freer and more secure when our government and its agents respect our privacy, the limits of government intrusion that reasonable citizens find unacceptable are not necessarily circumscribed only by what they choose to keep private.

Perhaps the time has come that courts recognize that by its own terms, the Fourth Amendment actually stipulates that "[t]he right of the *people* to be *secure* in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV (emphasis added). Courts tend to abridge this phrase essentially to "the right against unreasonable searches and seizures shall not be violated." Thus, the words "people" and "secure" get lost in the editing. Nevertheless, the framers presumably chose those words with some care and deliberation. With regard to their use of the word "people," they were certainly capable of speaking in the singular. For example, in the Fifth Amendment they provide, "No *person* shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, . . . nor shall any *person* be subject for the same offense to be twice put in jeopardy . . . ." U.S. Const. amend. V (emphasis added). This indicates to me that their choice of the plural in the Fourth Amendment was deliberate. In other words, the protection afforded by the Fourth Amendment is not just concerned with how government searches and seizures affect the interests of particular individuals, but it is also concerned with those that affect the public generally. Moreover, the overall purpose of the Bill of Rights was to restrain the arbitrary and capricious use of government power. Thus, given the Fourth Amendment's ratification in the aftermath of a revolution largely precipitated by such abuse of governmental power, it seems obvious to me that "security" was actually a significant legal

concept in the minds of the framers—something free people enjoyed in contrast to the insecurity generated by the arbitrary exercise of government authority as experienced by the framers and their fellow colonists prior to our independence as a nation.

If we consider the increasingly ubiquitous presence of public video surveillance camera networks, the use of electronic scanners that perform a virtual "strip search" of those who make use of some forms of public transportation along with the increasing use of GPS tracking devices, whatever intuitive unease we feel about the methods employed by agents of the government has less to do with a sense that the individual "right to privacy" of any particular person has been violated than with concerns about our sense of security from governmental monitoring of the citizenry as a whole.

Although the Supreme Court of the United States will ultimately have the last word, "the Fourth Amendment must keep pace with the inexorable march of technological progress, or its guarantees will wither and perish." United States v. Warshak, 631 F.3d 266, 285 (6th Cir. 2010). Therefore, as the courts consider how to construe the confluence of revolutionary advances in technology with the fundamental principles embodied in the Fourth Amendment, it may be time, in cases where these issues may be more appropriately addressed than this one, for the courts to do so with the express language and the original purpose of the Fourth Amendment in mind. [18] Perhaps in addition to determining whether an individual's reasonable expectation of privacy has been violated, we might also consider whether reasonable people would remain secure in their liberties if a particular investigative or surveillance method were pervasive. If they would not,

---

[18] Contrary to Judge Beales's assertion, I do not "suggest that the United States Supreme Court should overturn (or significantly alter) decades of Fourth Amendment precedent from that Court." I merely observe that as our culture continues to rapidly evolve based upon technological advances, Fourth Amendment jurisprudence must likewise continue to evolve, as it has done since the founding of the Republic, to accommodate such changes. I only suggest that as the courts participate in this evolution, as we must, we should do so with the original purpose of the Fourth Amendment in mind.

the courts should determine what restrictions—such as requiring reasonable articulable suspicion of criminal activity or a judicially authorized warrant based upon probable cause—would sufficiently narrow the method's application in a way that leaves all reasonable citizens with a realistic sense of security from arbitrary and invasive governmental monitoring of their daily activities.

# *VIRGINIA:*

*In the Court of Appeals of Virginia on* **Thursday** *the* **23rd** *day of* **September, 2010**.

David L. Foltz, Jr., s/k/a
  David Lee Foltz, Jr.,                                                               Appellant,

 against           Record No. 0521-09-4
                    Circuit Court No. CR08-312

Commonwealth of Virginia,                                                            Appellee.

From the Circuit Court of Arlington County

Before the Full Court

Pursuant to Code § 17.1-402(D)(ii), the Court, on its own motion, has decided to hear this case *en banc*. The parties shall file briefs in compliance with Rule 5A:35(b). It is further ordered that the appellant shall file twelve additional copies of the appendix previously filed in this case.

In accordance therewith, the mandate entered herein on September 7, 2010 is stayed pending the decision of the Court *en banc* and the appeal is reinstated on the docket of this Court.

A Copy,

Teste:

*original order signed by the Clerk of the
Court of Appeals of Virginia at the direction
of the Court*

Clerk

COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Felton, Judges Haley and Beales
Argued at Alexandria, Virginia


DAVID L. FOLTZ, JR., S/K/A
   DAVID LEE FOLTZ, JR.
                                                              OPINION BY
v.        Record No. 0521-09-4                   JUDGE RANDOLPH A. BEALES
                                                          SEPTEMBER 7, 2010
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                                   Joanne F. Alper, Judge

            Christopher R.K. Leibig (Andrea Moseley; Zwerling, Leibig &
            Moseley, P.C., on briefs), for appellant.

            Virginia B. Theisen, Senior Assistant Attorney General (Kenneth T.
            Cuccinelli, II, Attorney General; J. Robert Bryden, II, Assistant
            Attorney General, on brief), for appellee.


        David L. Foltz, Jr., (appellant) was convicted by a jury of abduction with intent to defile

pursuant to Code § 18.2-48 and was sentenced to life imprisonment.  On appeal, appellant argues

that the trial court erred in denying his motion to suppress.  In particular, appellant contends that

the court erred by ruling (1) that the placement of a GPS (global positioning system) device in

the bumper of his work van did not violate the Fourth Amendment of the United States

Constitution or Article 1, section 10, of the Virginia Constitution, and (2) that the use of a GPS

device to track appellant did not violate the Fourth Amendment of the United States Constitution

or Article 1, section 10, of the Virginia Constitution.[19]  After reviewing the relevant case law and

the record here, we affirm appellant's conviction for abduction with intent to defile.

_____

        [19] This Court granted appellant's petition to consider three questions.  However, during
oral argument, appellant conceded that the Commonwealth now agreed with him that the GPS
system was able to track appellant's van while it was in his employer's warehouse, which had

## I. Background

Appellant, a registered sex offender on probation for committing sexual assault, became a suspect in a new series of sexual assaults in Northern Virginia that followed a pattern similar to his previous crimes. At the time, appellant worked for a food services company that provided him with a company van. Company employees who were assigned vans were only allowed to drive them to the company headquarters, to off-site workplaces, and to their homes, unless they were given special permission. Appellant, however, was allowed to use the van assigned to him after work to drive to probation-related appointments. Employees were allowed to keep personal items in their assigned vans and were responsible for the vans while they were in the employees' possession.

The police reviewed appellant's schedule for work and for probation-related meetings, comparing that schedule to the areas and times for the series of unsolved sexual assaults. They determined that the offenses occurred "around the general area" where appellant worked and attended meetings, and the times were consistent with his work and meeting times. Based on all the information that they had collected, the police decided to monitor appellant's movements by attaching a GPS system to one of his vehicles. The police did not obtain a warrant. They also did not ask appellant's employer for permission to attach a GPS device to the van assigned to appellant.

On February 1, 2008, the Fairfax County police attached a GPS system to appellant's work van, which was parked on the street in front of appellant's home. The GPS system used three satellites to give the police information on the van's location. The GPS device itself operated on an independent battery and, therefore, did not draw any power from the van. To

been the central disagreement upon which the third question presented was based. Therefore, appellant concluded, his third question presented was not important to the resolution of his appeal. As a result, we do not consider the third question presented in this opinion.

install the GPS device, an officer "reached [his] hand sort of underneath the bumper to a place that is not observable [from] the public street." The bumper on the van was "a long tube" with plastic ends and holes in it. The GPS device was attached to the left side of the rear bumper using a magnet and "a sticky substance."

The GPS system did not take pictures nor allow the police to hear any conversations. It could not track particularly well "in a covered parking area," but could provide general information in any place with cell phone service and could send a signal through glass and plastic. The system archived the information that it collected,[20] but the police could also track the GPS device in real time.

The police had no policy regarding the use of GPS devices, in part because the devices were not used particularly often.[21] The police did not predetermine how long they would track appellant. The police also did not develop a policy to avoid following the van into private areas.

The only allegedly private area that the van entered between February 1, 2008, and February 6, 2008, was appellant's employer's place of business, a warehouse located down a short access road marked "Private Property." The warehouse was not open to the public, and vans in the warehouse were not visible from the public street. The GPS tracking log included information that the van was at the workplace, but the officers apparently did not examine this data before appellant's arrest.

The police did not examine any data from the GPS until the afternoon of February 5, 2008, when they observed, in real time via a computer screen with a map, that the van was

---

[20] The GPS log was introduced into evidence at trial.

[21] According to the evidence adduced at the suppression hearing, the Fairfax County Police Department used GPS technology in 61 cases out of approximately 13,000 total criminal cases in 2005, 52 cases out of approximately 14,000 total criminal cases in 2006, and approximately 46 cases out of 14,000 total criminal cases in 2007.

driven in and out of various neighborhoods. This pattern of driving concerned the officers, who characterized the pattern as hunting behavior. The officers watched the data stream for about 30 to 40 minutes – as the van was driving around.

On the evening of February 5, 2008, another sexual assault occurred. The police checked the GPS log to determine if appellant's work van was in the area at the time of the attack. They discovered that the van was parked about a block or two away from the scene of the attack at the time it occurred. The police decided to follow appellant themselves on February 6, 2008, the next day.

While actually following appellant on February 6, 2008, the police observed him park his vehicle,[22] get out, and put on a jacket and gloves. Two officers then followed appellant on foot. They observed him run, grab a woman who was walking down the street, and knock her to the ground. Appellant then pulled his victim under a tree, pinned her down, and tried to unbutton her pants. The police stopped the assault and arrested appellant.

Prior to trial, appellant filed a motion to suppress all evidence collected after the police turned on the GPS system and began tracking the work van that he was driving. He argued that the police needed a warrant to attach the device to the van and also needed a warrant to use the GPS system to track him. At the conclusion of the suppression hearing, the trial court found appellant had standing to argue Fourth Amendment violations of privacy in the placement of the GPS on the van and in the tracking of the van.[23] However, the trial court denied appellant's

---

[22] At this time, appellant was driving a different vehicle – apparently his own truck.

[23] The Commonwealth on appeal has argued, contrary to the ruling of the trial court, that appellant did not have standing because he was using the van for purposes other than the purposes approved by his employer. However, this finding by the trial court in this particular case does not fall into the category of rulings that the Commonwealth would have been allowed to appeal. See Code § 19.2-398(A) (granting to the Commonwealth the ability to petition for appeal pretrial rulings in limited cases where a trial court has dismissed an indictment or

motion to suppress, finding that the police needed reasonable suspicion, not a warrant, to put the

GPS device on the van and concluding that the police had reasonable suspicion that appellant

was committing the sexual assaults. The court also found that the van was not seized when the

GPS device was placed in the bumper and that appellant had no reasonable expectation of

privacy in the exterior of a van parked on a public street. Regarding the tracking itself, the trial

court found "all it did was technologically supplement that information which the police could

have obtained by their own sensory perception by actually trailing him or following him for a

period of time, which they ultimately did in making the arrest in this case." Thus, the trial court

found that appellant had failed to show "any actual invasion of his privacy." In addition, the trial

court also found that appellant failed to show that any tracking at his employer's warehouse

violated appellant's privacy.

## II. The Fourth Amendment[24] and Privacy

Appellant argues that the installation of the GPS device in the bumper of his work van

was both a search and a seizure of the vehicle.[25] He also argues that the use of the GPS system

---

suppressed evidence). Because the Commonwealth cannot legitimately raise the issue here, we will not address the question of standing.

[24] The privacy rights in the Virginia Constitution are coextensive with those in the United States Constitution. Lowe v. Commonwealth, 230 Va. 346, 348, 337 S.E.2d 273, 274 (1985) (citing A.E. Dick Howard, I Commentaries on the Constitution of Virginia 182 (1974)); Henry v. Commonwealth, 32 Va. App. 547, 551, 529 S.E.2d 796, 798 (2000) (discussing the Fourth Amendment of the United States Constitution and Article I, § 10 of the Virginia Constitution). Therefore, although appellant's questions presented refer to both the United States and Virginia Constitutions, to facilitate the readability of this opinion, we reference only the Fourth Amendment in our discussion here.

[25] The Commonwealth argues on appeal that appellant waived any argument that the placement of the GPS was a seizure. However, appellant made this argument at trial, the prosecutor responded to the argument, and the trial court addressed the argument in its ruling. Therefore, although some comments that appellant made during the hearing could be interpreted to waive this particular portion of his argument, pursuant to the Supreme Court's holding in Scialdone v. Commonwealth, 279 Va. 422, 436-42, 689 S.E.2d 716, 723-27 (2010), we find that appellant sufficiently preserved this argument for consideration on appeal.

was a search – both while he was driving the van and while it was parked inside his employer's warehouse.[26] Therefore, he contends, the police infringed upon his Fourth Amendment privacy interests and needed a search warrant before they could install the GPS device in the van and before they could activate the GPS system in order to track the van's movements.

On appeal, we review questions involving Fourth Amendment issues as mixed questions of fact and law. McCain v. Commonwealth, 275 Va. 546, 551, 659 S.E.2d 512, 515 (2008). In such cases:

> we give deference to the factual findings of the circuit court, but we independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment. The defendant has the burden to show that, considering the evidence in the light most favorable to the Commonwealth, the trial court's denial of his suppression motion was reversible error.

Id. at 552, 659 S.E.2d at 515 (citations omitted).

When considering a Fourth Amendment argument, courts must first determine whether a Fourth Amendment privacy right is involved – using a well-established, two-pronged test:

> [A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable. See [Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, concurring)]. We have subsequently applied this principle to hold that a Fourth Amendment search does not occur – even when the explicitly protected location of a house is concerned – unless "the individual manifested a subjective expectation of privacy in the object of the challenged search," and "society [is] willing to recognize that expectation as reasonable." [California v.] Ciraolo, [476 U.S. 207,] 211 [(1986)].

Kyllo v. United States, 533 U.S. 27, 33 (2001); see also Oliver v. United States, 466 U.S. 170, 177 (1984). Thus, in order to prevail here, appellant must establish both that he exhibited a

---

[26] The trial court found, *inter alia*, that the police had reasonable suspicion that appellant was the perpetrator of a series of sexual assaults in the Northern Virginia area. Appellant does not contest this ruling on appeal.

subjective expectation of privacy in the bumper of the van and in his movements with the van *and* that society recognizes these expectations as reasonable.

## A. Installation of the GPS Device

Appellant argues that the police violated his privacy interests when they placed the GPS device inside the bumper of his work van while it was parked on the street in front of his house. He also argues that the police committed a seizure when they installed the GPS device because it "changed the nature" of the van by decreasing its value. We find neither argument persuasive.

### 1. Installation of GPS as a Search

Appellant claims he exhibited an expectation of privacy in the van's bumper while it was parked on a public street. The evidence does not support this assertion.

Neither the United States Supreme Court nor the Supreme Court of Virginia has addressed the issue of whether installing a tracking device directly on a car violates an expectation of privacy. However, the United States Supreme Court in United States v. Karo, 468 U.S. 705 (1984), considered facts similar to the ones in this case. In Karo, tracking devices were placed in containers of ether that were then purchased by Karo, who in turn placed the containers in his vehicle. Id. at 707. In finding that the transfer of the container to Karo did not infringe on his privacy, the Court explained:

> [The transfer] conveyed no information that Karo wished to keep private, for it conveyed no information at all. To be sure, it created a potential for an invasion of privacy, but we have never held that potential, as opposed to actual, invasions of privacy constitute searches for purposes of the Fourth Amendment.

Id. at 712. Similarly here, the installation of the GPS device did not relay any private information to the police.

The United States Court of Appeals for the Ninth Circuit addressed whether the installation of tracking devices on a vehicle violates a suspect's expectation of privacy in United

States v. McIver, 186 F.3d 1119 (9th Cir. 1999). In that case, forestry agents photographed McIver at the site of growing marijuana plants and then attached two tracking devices to the undercarriage of his 4Runner. McIver argued that the agents needed a search warrant to attach the devices. The Ninth Circuit Court of Appeals found that the officers did not "search" the vehicle by placing magnetized tracking devices on its undercarriage because McIver did not prove "that he intended to preserve the undercarriage" of the vehicle "from inspection by others" and "the officers did not pry into a hidden or enclosed area." 186 F.3d at 1127.

Similarly here, appellant did nothing to prevent others from inspecting the bumper of the work van. See Cardwell v. Lewis, 417 U.S. 583, 591 (1974) (finding a defendant's privacy rights were not violated when the police examined a tire and took a paint sample from a car in a public parking lot because the vehicle was exposed to the public). The vehicle was not parked on private property, but instead was on a public street where anyone could approach it. See United States v. Pineda-Moreno, 591 F.3d 1212, 1215 (9th Cir. 2010) ("If a neighborhood child had walked up Pineda-Moreno's driveway and crawled under his Jeep to retrieve a lost ball or runaway cat, Pineda-Moreno would have no grounds to complain."), reh'g en banc denied, 2010 U.S. App. LEXIS 16708 (Aug. 12, 2010). The police did not need to remove a lock, latch, or cover to reach into the bumper and attach the GPS device. See United States v. Rascon-Ortiz, 994 F.2d 749, 754-55 (10th Cir. 1993) (finding that the agent did not violate a defendant's privacy by examining the undercarriage of a vehicle because "[t]he undercarriage is part of the car's exterior, and as such, is not afforded a reasonable expectation of privacy" and because the agent did not "disturb[] or move[] parts of the car in order to facilitate his observations"). As the United States Supreme Court has explained, "[t]he exterior of a car, of course, is thrust into the public eye, and thus to examine it does not constitute a 'search.'" New York v. Class, 475 U.S.

- 8 -

106, 114 (1986). Nothing in the record here suggests that appellant attempted to prevent the "public eye" from viewing the van or its bumper.

Because the actual act of simply placing the GPS device in the bumper of appellant's work van conveyed no private information to the police and because appellant did nothing to prevent the public from observing the bumper, we find he did not exhibit an expectation of privacy in this area of the van. Thus, the installation was not a search that raised a Fourth Amendment privacy issue.

As we find that appellant did not exhibit a subjective expectation of privacy in the bumper of his vehicle, we need not address whether society is prepared to recognize such an expectation as reasonable. However, we do note that the bumper of a van parked on a public street – as opposed to a place that would indicate appellant intended to prevent public access and viewing of the van – does not "provide the setting for those intimate activities that the [Fourth] Amendment is intended to shelter from government interference or surveillance. There is no societal interest in protecting the privacy of those activities" that might occur in a bumper, especially when vehicles are parked on public streets that "are accessible to the public and the police in ways that a home, an office, or commercial structure would not be." Oliver, 466 U.S. at 179; see California v. Carney, 471 U.S. 386, 392 (1985) ("The public is fully aware that it is accorded less privacy in its automobiles because of this compelling governmental need for regulation."); South Dakota v. Opperman, 428 U.S. 364, 367 (1976) (finding that "less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office").

2. Installation of GPS as a Seizure

Appellant also claims that he had an expectation of privacy against seizures of the van. He argues that the police seized the van when they placed the device in the van's bumper because it "changed the nature" of the property, decreasing its value.

The United States Supreme Court in <u>Karo</u> explained that seizure of property occurs "when 'there is some meaningful interference with an individual's possessory interests in that property.'" 468 U.S. at 712 (quoting <u>United States v. Jacobsen</u>, 466 U.S. 109, 113 (1984)). The Court then noted, "The existence of a physical trespass is only marginally relevant to the question of whether the Fourth Amendment has been violated, however, for an actual trespass is neither necessary nor sufficient to establish a constitutional violation." <u>Id.</u> at 712-13 (citing <u>Katz v. United States</u>, 389 U.S. 347 (1967); <u>Oliver v. United States</u>, 466 U.S. 170 (1984)).

Here, appellant does not establish the placement of the GPS in the van's bumper was a "meaningful interference" with his interest in the van. Although appellant contends that people commonly do not want to purchase vehicles that can be tracked by the police, it seems just as common for people to purchase cars that have devices installed that allow tracking of the vehicle. In addition, appellant's "possessory interests" in the value of the van are exceptionally limited because he did not own the van. It belonged to his employer. The president of that company testified at the suppression hearing, but he did not express and has not expressed any concerns or objections regarding the installation of the device in his company's van.[27] Therefore, any decrease in the value of the van would have had a minimal, not a meaningful, interference with appellant's interests in the vehicle. We do not reach the question of whether there would have

---

[27] The police did not ask appellant's employer for permission to install the GPS device.

been a seizure of the van under these circumstances if appellant had owned the van because we do not need to do so in order to decide the question before us.[28]

Appellant urges this Court to consider Commonwealth v. Connolly, 913 N.E.2d 356 (Mass. 2009), where the Massachusetts Supreme Court concluded that "the installation and use of the GPS tracking device" was a seizure. Id. at 361. In that case, the Massachusetts police installed a GPS device in the engine compartment of Connolly's minivan, so that the device could draw power from the vehicle's battery. Id. at 361-62. Relying on the Massachusetts Declaration of Rights, which is more expansive than the Fourth Amendment,[29] the Massachusetts court concluded:

> a warrant was required here because the initial installation of the particular device clearly constituted a seizure under art. 14. The installation required not only entry by the police into the minivan for one hour, but also operation of the vehicle's electrical system, in order to attach the device to the vehicle's power source and to verify that it was operating properly. Moreover, operation of the device required power from the defendant's vehicle, an ongoing physical intrusion.

Id. at 369. Clearly, the installation in Connolly differs greatly from the installation in this case. Here, the police did not access the inside of the vehicle by lifting the hood or moving any part of the van. The GPS device installed by the Fairfax police did not use any power from the van's battery, but instead operated independently, unlike the one in Connolly. In addition to these factual differences, the legal analysis of the Massachusetts court is not relevant here as Article I, § 10 of the Virginia Constitution is coextensive with the Fourth Amendment of the United States

---

[28] Nor do we reach the question of whether there would have been a search of the van under this situation if appellant had owned the van because we do not need to do so in order to decide the question before us.

[29] In Commonwealth v. Balicki, 762 N.E.2d 290 (Mass. 2002), the Massachusetts Supreme Court found, upon considering the plain view doctrine, that the Massachusetts Constitution "affords greater protections to a person in certain circumstances than those provided by Federal decisions interpreting the Fourth Amendment." Id. at 299 n.11 (citation omitted).

Constitution – not broader. <u>Lowe v. Commonwealth</u>, 230 Va. 346, 348, 337 S.E.2d 273, 274 (1985). Therefore, <u>Connolly</u> is not persuasive authority for this Court.

Instead, we find <u>McIver</u> instructive. In that case, discussed *supra*, the Ninth Circuit Court of Appeals found that officers did not "seize" the vehicle because the defendant did not prove that the placement of the tracking devices "deprived him of dominion and control of his Toyota 4Runner, nor did he demonstrate" that the devices damaged his vehicle in some way. 186 F.3d at 1127. The court concluded that McIver had not established that the placement "meaningfully interfere[d]" with his "possessory interest" in the 4Runner. <u>Id.</u>

We also find <u>United States v. Garcia</u>, 474 F.3d 994 (7th Cir. 2007), persuasive. In <u>Garcia</u>, the police attached a self-powered GPS to Garcia's car while it was parked on a public street. Garcia argued that the installation of the GPS was a seizure of his car. The United States Court of Appeals for the Seventh Circuit disagreed, explaining that Garcia's argument was "untenable." The court explained:

> The device did not affect the car's driving qualities, did not draw power from the car's engine or battery, did not take up room that might otherwise have been occupied by passengers or packages, did not even alter the car's appearance, and in short did not "seize" the car in any intelligible sense of the word.

<u>Id.</u> at 996.

In the case before this Court, as in <u>McIver</u> and <u>Garcia</u>, the installation of the GPS device in no way interfered with appellant's ability to operate the vehicle. The police did not damage the van by installing the GPS device in the bumper. No private information was exposed by the act of simply installing the device. In addition, as noted *supra*, appellant's possessory interest in the vehicle was limited, as the van belonged to his employer, not to him. We, therefore, conclude that any interference with appellant's limited possessory interest in the van was not a

"'meaningful interference'" by the police. Karo, 468 U.S. at 712. Thus, the installation in this case did not constitute a seizure for Fourth Amendment purposes.

B. Activation of the GPS Device

Appellant also argues that the actual tracking of the van violated his Fourth Amendment privacy interests. Specifically, he contends that continually tracking his movements on the public roadways was a violation of his expectation of privacy. He also contends that tracking the van to his employer's warehouse, i.e., on private property, violated the Fourth Amendment.

Before addressing the specifics of his argument, we note that appellant raises several dire predictions of law enforcement officers attempting to track the whereabouts of every citizen in Virginia, if this Court finds the trial court did not err here. Several other appellate courts have acknowledged a very legitimate concern that, if the police are allowed to randomly track whole sections of the population without probable cause or reasonable suspicion, then privacy rights may well be violated. See, e.g., United States v. Knott, 460 U.S. 276, 284 (1983) ("[I]f such dragnet-type law enforcement practices as respondent envisions should eventually occur, there will be time enough then to determine whether different constitutional principles may be applicable."); Garcia, 474 F.3d at 998 ("It would be premature to rule that such a program of mass surveillance could not possibly raise a question under the Fourth Amendment . . . ."). However, this case does not involve dragnets and mass surveillance, so these warnings are not as relevant here. See Dow Chemical Co. v. United States, 476 U.S. 227, 239 n.5 (1986) ("Fourth Amendment cases must be decided on the facts of each case, not by extravagant generalizations.").

1. Tracking on Public Roadways

Appellant argues that he exhibited an expectation of privacy while he was driving the work van down public streets and that society recognizes this expectation of privacy as

reasonable. In making this particular argument, appellant raises concerns of an Orwellian society resulting from the use of sophisticated technologies such as GPS tracking – concerns that do indeed initially raise practical and constitutional alarms. See Garcia, 474 F.3d at 998 ("One can imagine the police affixing GPS tracking devices to thousands of cars at random, recovering the devices, and using digital search techniques to identify suspicious driving patterns. One can even imagine a law requiring all new cars to come equipped with the device so that the government can keep track of all vehicular movement in the United States."). However, given the facts of this particular case, as Judge Posner and the Seventh Circuit Court of Appeals also concluded in Garcia, "[w]hether and what kind of restrictions should, in the name of the Constitution, be placed on such surveillance when used in routine criminal enforcement are momentous issues that fortunately we need not try to resolve in this case." Id. As in Garcia, appellant's claims fail to hold water under the facts of this case because the police used the GPS device to crack this case by tracking appellant on the public roadways – which they could, of course, do in person any day of the week at any hour without obtaining a warrant. Therefore, we disagree with appellant's argument and find that Judge Posner's comments about judicial restraint are also appropriate and applicable here, where the police also used a GPS device primarily to track a suspect on public streets. Consequently, we do not address the concerns raised by appellant regarding what may one day be potential future practices of the police, but instead address appellant's arguments regarding the actual actions of the police taken in the case before us.

### a. Subjective Expectation of Privacy

Appellant claims that he manifested a subjective expectation of privacy with his "hunting" behavior, i.e., by driving around in the van looking for victims. While we believe that

appellant wanted this behavior to remain undetected, this "hunting" behavior on the public streets did not indicate a subjective expectation of privacy. See Class, 475 U.S. at 114.

The police tracked appellant as he drove a van that was emblazoned with his employer's logo, which helped advertise the company's name to people who observed the van going by them on the public streets. The van itself, therefore, suggested that people would observe its movements. Appellant did nothing to minimize the visibility of the logo or the van in general. In addition, nothing in this record suggests that appellant attempted to hide the movement of the van or "sneak" it down the road. He did nothing to prevent people from observing him as he drove on the public streets. In fact, the officers described his "hunting" behavior as driving slowly through the same areas, repeating a pattern – actually making it easier rather than harder for someone to observe the van's movements. This kind of behavior does not indicate that appellant actually attempted to prevent people from observing his actions. Compare Katz v. United States, 389 U.S. 347, 352 (1967) (explaining that when an individual enters a phone booth, closes the door, and pays to make a call, the individual has evidenced an expectation that his conversation will not be heard by an "uninvited ear"). Appellant did not exhibit a subjective expectation of privacy while he was driving the work van down public streets.

b. Societal Expectation of Privacy

Appellant also claims that society recognizes as reasonable an expectation "not to be constantly tracked." However, the United States Supreme Court has held that society does not recognize such an expectation for vehicles *on public streets*. Knotts, 460 U.S. at 281 ("A person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another."); Cardwell, 417 U.S. at 590 ("A car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its contents are in plain view."); see also Garcia, 474 F.3d at 997 ("The substitute here [using GPS

to track a suspect] is for an activity, namely following a car on a public street, that is unequivocally *not* a search within the meaning of the amendment."). Society recognizes a privacy right not to be tracked in one's home, but the home is a very different setting from a public street. See Kyllo, 533 U.S. at 33 ("While we upheld enhanced aerial photography of an industrial complex in Dow Chemical, we noted that we found 'it important that this is *not* an area immediately adjacent to a private home, where privacy expectations are most heightened,' 476 U.S. at 237, n.4 (emphasis in original)."); Karo, 468 U.S. at 715 (noting that, just as an officer cannot "surreptitiously" enter a home to determine if contraband is in the home, police cannot "surreptitiously employ[] an electronic device to obtain information that it could not have obtained by observation from outside the curtilage of the house"). As appellant's movements in his home were not tracked – only the movements of the work van were recorded – no recognized privacy right was violated when the police used the GPS device to track the van's movements on the public streets.

Appellant acknowledges the United States Supreme Court's holding in Knotts that "persons do not have a reasonable expectation of privacy in their movements on the public streets." However, he argues that technology has evolved since Knotts was decided, and, therefore, we should not consider the United States Supreme Court's holding in that case as controlling here.

In Knotts, the police placed a beeper into a container that was then sold to Knotts and his co-defendants. 460 U.S. at 278. Unlike here, where the GPS system automatically tracked and recorded the movement of the van, the beeper technology discussed in Knotts required that the police follow the signal from the beeper as the container was moved. Id. We find that this advancement in tracking technology provides an insufficient basis for distinguishing Knotts. As the trial court found, the use of GPS tracking only enabled the police to "technologically

- 16 -

supplement that information which the police could have obtained by their own sensory perception" if they had been physically following appellant – and physically following a van's movements on public streets (which is the key to the police's resolution of this case), without stopping or interfering with the van, is certainly constitutionally legitimate behavior for police officers.

The United States Supreme Court has acknowledged a difference between technology used as a substitute for legitimate police behavior and technology used as a substitute for police actions that violate the Fourth Amendment. Karo, 468 U.S. at 715. Based on the record in this case, the GPS technology used here did not provide a substitute for police behavior that would have otherwise violated a recognized right to privacy. Here, a police officer could have followed and personally recorded the movements of the van, and, as appellant concedes, such an investigation would not have violated any recognized right of privacy.[30] The Court in Knotts, in

---

[30] The facts of this case are distinguishable from those recently considered in United States v. Maynard, No. 08-3034, 2010 U.S. App. LEXIS 16417, at *4, 20 (D.C. Cir. Aug. 6, 2010), which, of course, is not controlling precedent for this Court. In Maynard, the police tracked the movements of a co-defendant, Jones, 24 hours a day for four weeks using a GPS device they had installed on Jones's own Jeep without a warrant. Maynard, 2010 U.S. App. LEXIS 16417, at *22. Reversing the denial of Jones's motion to suppress in that case, the United States Court of Appeals for the District of Columbia Circuit held that "*the whole* of a person's movements *over the course of a month* is not actually exposed to the public because the likelihood a stranger would observe all those movements is not just remote, it is essentially nil." Maynard, 2010 U.S. App. LEXIS 16417, at *35 (emphasis added). In so holding, the Court reasoned that a reasonable person does not expect a "stranger to pick up the scent again the next day and the day after that, *week in and week out*, dogging his prey until he has identified *all the places, people, amusements, and chores* that make up that person's hitherto private routine." Maynard, 2010 U.S. App. LEXIS 16417, at *35-36 (emphasis added). Here, the police used GPS technology affixed to the outside of appellant's work van (with its advertising of his employer's business on the van's sides and with his employer's restrictions on appellant's use of the van) to track appellant's movements *with that van* for at most six days. On these facts, the police were able to monitor only *portions* of appellant's daily movements for those six days – not *the whole* of his movements for nearly a month, which was the situation in Maynard. See Maynard, 2010 U.S. App. LEXIS 16417, at *39 ("*The whole* of one's movements over the course of a month is not constructively exposed to the public because, like a rap sheet, that whole reveals far more than the individual movements it comprises." (emphasis added)). Thus, whereas in Maynard the police used GPS technology to track the whole of defendant Jones's

fact, noted that "[n]othing in the Fourth Amendment prohibited the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded them in this case." 460 U.S. at 282. The fact that the police used technology to follow the van's movements on public streets, therefore, did not somehow invade appellant's recognized privacy interests because the GPS did not act as a substitute for unconstitutional police action.[31]

As the Supreme Court explained in Smith v. Maryland, 442 U.S. 735, 741 (1979), the analysis here requires that a court determine if the "contents" of private behavior were invaded by the police. Here, the police tracked the movement of a van. The GPS did not give the police the ability to intercept appellant's conversations or to observe any private behavior inside the van. The van did not go into appellant's home. See Cardwell, 417 U.S. at 590 ("One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects."); contrast United States v. Bailey, 628 F.2d 938, 943-44 (6th Cir. 1980) (finding Bailey's reasonable expectation of privacy was violated by the police using a beeper to track containers of chemicals being stored in various apartments). The GPS tracking simply "enabled the police to be more effective in detecting crime" because they could follow the van on the streets without losing it and without using limited police manpower. Knotts, 460 U.S. at 284. Improving "police efficiency" is certainly not unconstitutional as long as the underlying observation by the police was not

movements in his own Jeep around the clock for nearly a month, the police here used GPS technology for less than a week to track appellant while he was driving a company van that had advertising intended to reach the public on it – and never used GPS technology to track appellant while appellant was driving his own vehicle.

[31] A New York appellate court has held that warrantless tracking of a defendant with a GPS device for 65 days violated the State of New York's constitution, but that court acknowledged that the United States Constitution might not include this level of protection. People v. Weaver, 909 N.E.2d 1195, 1201-03 (N.Y. 2009). Here, the tracking with the GPS device was for at most six days.

unconstitutional.  Id.; see Garcia, 474 F.3d at 998 (noting that the Fourth Amendment "cannot sensibly be read to mean that police shall be no more efficient in the twenty-first century than they were in the eighteenth").  As observing a person's work van on the public streets is not unconstitutional, the police's use of the GPS system to track appellant while he was in the van on the public streets likewise did not violate the Fourth Amendment.

2.  Tracking at the Employer's Warehouse

Appellant argues that the GPS system tracked the van onto the private property of his employer, which he alleges violated the Fourth Amendment.  Therefore, he contends, the trial court should have granted his motion to suppress.

The trial court specifically found that appellant had not proven "that by tracking him to the business, his place of business, that there was anything there that caused an invasion of his privacy."  On appeal, appellant does not explain how the police violated *his own* privacy expectations by tracking his work van to *his employer's* warehouse.  Therefore, appellant has not established a subjective expectation of his own privacy that was violated by the GPS tracking of his employer's van when it was parked at his employer's place of business.[32]  See Kyllo, 533 U.S. at 33.  Furthermore, it certainly appears, as the Commonwealth argues, that the GPS tracking of the work van while at the warehouse did not contribute in any way to the decision by the police to personally follow appellant on February 6, 2008.

Appellant cites several federal district court cases involving cell phones, which can and often are taken into private *homes* to support his position that the police cannot track individuals on private property.  However, appellant does not argue that the police tracked his movements in his home, so those cases do not apply.  The "potential" use of GPS tracking in other

---

[32] Employer did not in any way claim the tracking of its van onto the private property of its warehouse was improper, nor could appellant have objected on behalf of his employer even if employer had done so.  Employer, of course, was not a party to this proceeding.

circumstances to follow individuals into truly private areas has no place in the analysis of this case.  <u>Karo</u>, 468 U.S. at 712-13; <u>Dow Chemical Co.</u>, 476 U.S. at 239 n.5.

III.  Conclusion

We find the police did not violate the Fourth Amendment of the United States Constitution or Article 1, section 10, of the Virginia Constitution by installing a GPS device in the bumper of appellant's work van while it was parked on a public street or by tracking the van with the GPS system on the public streets, especially given that, before installing the GPS device and tracking the van, the police had reasonable, articulable suspicion that appellant was involved in a series of sexual assaults.[33]  Because we find that there is no search or seizure prohibited under the Fourth Amendment or under the Virginia Constitution, we do not need to further address appellant's argument that the evidence he seeks to suppress should have been excluded at trial as "fruit of the poisonous tree."

---

[33] During the suppression hearing, the Commonwealth asked the trial court to find that the evidence which appellant sought to suppress was not the "fruit" of a violation of his Fourth Amendment rights.  <u>See</u> <u>Wong Sun v. United States</u>, 371 U.S. 471, 487-88 (1963) (discussing the "fruit of the poisonous tree" doctrine for exclusion of evidence).  However, the trial court instead explicitly based its denial of the motion to suppress on its finding that appellant's Fourth Amendment rights were not violated.  In discussing the facts that supported this decision, the trial court did find that, after collecting the information from the GPS device and reviewing it, the police then decided to personally follow appellant, suggesting that they would not have followed him unless they had knowledge of his movements that the GPS tracking provided.  On appeal, the Commonwealth has argued that there is simply no Fourth Amendment violation in this case.  The Commonwealth has not really argued to this Court that, even if there were a Fourth Amendment violation by attaching and using the GPS device to track the van on the public streets, the testimony of the police who then followed appellant and observed his attack on the victim was, nevertheless, not "fruit of the poisonous tree."  Indeed, the Commonwealth states on brief, "[T]he defendant's driving on public roads on the afternoon and evening of February 5, 2008, provided the impetus for the physical surveillance" by the police that resulted in their observing his attack on the victim.  Therefore, although the concurring opinion would decide this case on the "fruit of the poisonous tree" doctrine, we believe the better ground on which to decide this case is the lack of a Fourth Amendment violation here.

- 20 -

Based on the foregoing, we affirm the trial court's denial of appellant's motion to suppress and affirm appellant's conviction for abduction with intent to defile.

Affirmed.

Felton, C. J., concurring.

I concur in that part of the majority opinion affirming the trial court's judgment denying appellant's motion to suppress the eyewitness testimony of the law enforcement officers who saw appellant attack the victim.[34] The majority opinion affirms the trial court's ruling that the officers did not violate appellant's Fourth Amendment protections against unreasonable searches and seizures when they placed a GPS device in the bumper of appellant's employer's van, used by appellant in his job, while the van was parked on a public street, and used the data from that device to track and map appellant's movement. While I have no concerns with the analysis of the majority in its determination that the placement of the GPS on the van and the use of the GPS tracking information did not violate appellant's Fourth Amendment rights, it is my view that analysis is not the narrowest grounds on which to decide the issue before the Court on appeal: whether the officers' eyewitness testimony of the attack should be suppressed. "[A]n appellate court decides cases 'on the best and narrowest ground available.'" Luginbyhl v. Commonwealth, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) (en banc) (quoting Air Courier Conference v. Am. Postal Workers Union, 498 U.S. 517, 531 (1991) (Stevens, J., concurring)).

Appellant was a registered sex offender who had recently been released from prison. At the time of appellant's attack on the victim, law enforcement officers were conducting a visual surveillance of appellant as he drove his personal car on public roadways. Based on information law enforcement officers had developed in investigating a series of unsolved sexual assaults in that region, they had begun to focus on appellant as a prime suspect in those unsolved crimes prior to placing the GPS device on appellant's employer's van.

---

[34] Appellant's petition for appeal to this Court contained eight questions presented. We granted only three questions presented, each of which related to whether the officers' use of the GPS tracking device violated appellant's Fourth Amendment protection against unreasonable searches and seizure requiring the trial court to exclude any direct or derivative evidence obtained by the use of that device.

Even assuming, without deciding, that the officers' placing a GPS device in the bumper of employer's van driven by appellant, while that vehicle was on a public street, somehow violated appellant's Fourth Amendment rights, the evidence appellant sought to suppress was the officers' eyewitness testimony of appellant attacking the victim. There is no dispute that the officers' eyewitness testimony, which appellant seeks to suppress as the "fruit of the poisonous tree" of the asserted violation of his Fourth Amendment rights,[35] was competent and relevant evidence proving appellant abducted the victim from the sidewalk to sexually assault her.

In Warlick v. Commonwealth, 215 Va. 263, 266, 208 S.E.2d 746, 748 (1974),[36] the Supreme Court provided three limitations to the exclusionary rule and the "fruit of the poisonous tree" doctrine: "(1) evidence attributed to an independent source; (2) evidence where the connection has become so attenuated as to dissipate the taint; and (3) evidence which inevitably would have been gained even without the unlawful action." The record on appeal clearly reflects that the officers had obtained evidence independently of that provided through the GPS device that appellant was a strong suspect in the recent unsolved sexual assaults in the region. The record shows that their focus on appellant as a prime suspect was based on a comparison of the *modus operandi* that led to his prior conviction to the *modus operandi* used by a perpetrator of the recent unsolved sexual assaults. The latter assaults occurred in the area where appellant lived and where he attended meetings required as part of his probation requirements following his release from prison. Based on that information, the officers determined that they would visually follow appellant's movement. On the day of the attack at issue here, they observed appellant

_____

[35] See Wong Sun v. United States, 371 U.S. 471, 487-88 (1963).

[36] See Brown v. City of Danville, 44 Va. App. 586, 600-02, 606 S.E.2d 523, 530-32 (2004) ("[I]f a person engages in new and distinct criminal acts in response to unlawful police conduct, the exclusionary rule does not apply, and evidence of the events constituting the new criminal activity, including testimony describing the defendant's own actions, is admissible.").

- 23 -

driving his personal car, then park and leave it on a public street and walk in the direction of a woman who was walking by herself on the public way. When the officers saw appellant sexually attack the woman, they intervened, rescued the victim, and arrested him for the sexual assault.

In my view, the record on appeal provides no basis to exclude the eyewitness testimony of the officers who witnessed appellant's sexual attack on the victim. The officers' eyewitness testimony, as well as that of the victim, was competent to prove that appellant was guilty of abduction with the intent to defile the victim. Accordingly, I would affirm appellant's conviction without addressing the GPS Fourth Amendment issue.